**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ING BANK N.V.,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.** |
| **THE NATIONAL SHIPPING** | § | **ADMIRALTY** |
| **COMPANY OF SAUDI ARABIA (a.k.a** | § | |
| **"BAHRI")** | § | |
| | § | |
| **Defendant** | § | |

## <u>VERIFIED COMPLAINT</u>

NOW COMES, plaintiff, ING Bank N.V. ("ING") through undersigned counsel, and files this Verified Complaint against defendant, the National Shipping Company of Saudi Arabia, also known as "Bahri", hereafter "NSCSA", *in personam*, for damages, maritime attachment, and garnishment of property of NSCSA and, upon information and belief, alleges and avers as follows:

### <u>Jurisdiction and Venue</u>

1.

This is an admiralty and maritime claim within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333, Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and Federal Rule of Civil Procedure 9(h).

2.

Venue is proper in this District in accordance with Rule B as NSCSA has and / or will have property in this District in the form of the oceangoing vessel M/V BAHRI YANBU, IMO

No. 9626534, and her engines, tackle, equipment, furniture, appurtenances, etc., hereafter the "BAHRI YANBU", which vessel is or will be within the physical jurisdiction of this Court during the pendency of this action.

**Parties**

3.

At all material times, ING was and is a banking and financial services corporation or business entity organized and existing pursuant to the laws of The Netherlands, with a place of business in Amsterdam, The Netherlands.  As more fully set forth herein, ING is an assignee of certain accounts, assets and maritime liens of O.W. Bunker Middle East DMCC ("OW Bunker"), including the accounts receivable and corresponding maritime liens owed by the following vessels owned by NSCSA:

      A.     the M/V LULU, IMO No. 9237797 (the "LULU");

      B.     the M/V NIBAN, IMO No. 9484716 (the "NIBAN");

      C.     the M/V GHINAH, IMO No. 9484728 (the "GHINAH");

      D.     the M/V KAHLA, IMO No. 9386952 (the "KAHLA");

      E.     the M/V SAHBA, IMO No. 9388273 (the "SAHBA");

      F.     the M/V GHAZAL, IMO No. 9387009 (the "GHAZAL"); and,

      G.     the M/V HAWTAH, IMO No. 9102265 (the "HAWTAH").

(The LULU, NIBAN, GHINAH, KAHLA, SAHBA, GHAZAL and the HAWTAH are sometimes collectively referred to as the "Supplied Vessels").

4.

ING, as the holder of OW Bunker's aforesaid accounts receivables against NSCSA and maritime liens against the Supplied Vessels, prosecutes this admiralty claim against NSCSA and

requests the maritime attachment of the BAHRI YANBU as more fully set forth herein.

5.

ING is the coordinator, agent, and security agent under that certain US$ 700,000,000.00 Multicurrency Revolving Borrowing Base Facilities Agreement, dated December 19, 2013 (the "Credit Agreement"), and related guaranty, pledge, and security agreements, including that certain English Omnibus Security Agreement, dated December 13, 2013 (the "Security Agreement").

6.

OW Bunker is a borrower and guarantor of the obligations owing under the Credit Agreement and is in default of those obligations.

7.

OW Bunker is also a party to the Security Agreement, pursuant to which it absolutely assigned all of its rights, title and interests as of December 13, 2013, in certain assets, including customer accounts receivable for bunker deliveries, to ING.

8.

OW Bunker has assigned to ING all of its rights, title and interests, including its right to institute this action against NSCSA and enforce its maritime liens against the Supplied Vessels, in the amounts owed to OW Bunker for bunker deliveries made to the Supplied Vessels, as more fully described *infra*.  For clarity, OW Bunker and ING will collectively be referred to as "OW Bunker" throughout the remainder of this pleading, unless otherwise indicated.

9.

At all relevant times defendant, NSCSA, was and still is a foreign business entity with its corporate head office at Bahri Building #569, Sitteen Street, Malaz Area, P.O. Box 8931,

Riyadh, Kingdom of Saudi Arabia, 11492, and was the registered owner of the BAHRI YANBU and the Supplied Vessels.

10.

Undersigned counsel for OW Bunker has contacted the Secretary of the State of Texas and verified that NSCSA is neither registered to do business within the State of Texas nor has it appointed any registered agent for service of process.

**Overview of Transactions between OW Bunker and NSCSA
for the Sale and Delivery of Bunkers to NSCSA Vessels**

11.

As discussed with greater specificity herein, when NSCSA ordered bunkers for its vessels, including the Supplied Vessels, from OW Bunker, OW Bunker would issue a sales order confirmation to NSCSA, and sometimes jointly to NSCSA and its disclosed agent, Mideast Ship Management Limited JLT ("Mideast"), which sales order confirmation would identify the specific vessel to be supplied with bunkers, the location of supply, the estimated date(s) of supply, the type and quantity of bunkers to be supplied, the price per volume of bunkers to be supplied, as well as other provisions.

12.

The sales order confirmation contained the following relevant language:

The sale and delivery of the marine fuels described above are subject to the OW Bunker Group's Terms and Conditions of sale(s) for Marine Bunkers. The acceptance of the marine bunkers by the vessel named above shall be deemed to constitute acceptance of said general terms to you as 'Buyer' and to O.W. Bunker Middle East DMCC as 'Seller'.

The fixed terms and conditions are well known to you and remain in your possession. If this is not the case, the terms can be found under the web address: http://owbunker.com/wp-ontent/uploads/2013/12/OWB_ValidFrom01092013.pdf

4

13.

Accordingly, the sales order confirmation, as well as the sale and delivery of the marine fuels to each Supplied Vessel, were subject to the OW Bunker Group Terms and Conditions of sale for Marine Bunkers, Edition 2013, a true and correct copy of which is attached as Exhibit A, hereafter the "General Terms".

14.

Article B.1 of the General Terms defines the term "Buyer" to mean the vessel supplied and, jointly and severally her master, owners, managers/operators, disponent owners, time charters, bareboat charterers, and charterers.  (Ex. A, General Terms, p. 2, art B.1.)  As discussed *infra*, each Supplied Vessel accepted marine bunkers from OW Bunker, pursuant to their respective sales order confirmation. Accordingly, each Supplied Vessel, her manager / operator Mideast, and her owner NSCSA, fall within the definition of Buyer and are, therefore, bound and obligated jointly and severally to the sales order confirmation and to the General Terms, which General Terms were incorporated in the sales order confirmation by express reference and adoption.  See *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011).

15.

Article I.3(iv) of the General Terms provides as follows:

Where [the Supplied Vessel] fails to pay timely, [OW Bunker] has the right to (without prejudice to its rights to receive default/delay compensation) take all appropriate steps to secure and enforce its claim…

(Exh. A, General Terms, p. 7, art. I.3).

16.

Article I.9 of the General Terms provides as follows:

Where Bunkers are supplied to [the Supplied Vessel], in addition to any other security, the Agreement is entered into and the Goods are supplied upon the faith and credit of [the Supplied Vessel]. It is agreed and acknowledged that the sale of Bunkers to [the Supplied Vessel] and/or their acceptance on [the Supplied Vessel] create a maritime lien over [the Supplied Vessel] for the price of the Bunkers (and all interest and costs payable in respect thereof; including but not limited to the reasonable attorney's fees), such maritime lien afforded to [OW Bunker] over [the Supplied Vessel]. In any event any applicable Law shall not prejudice the right of the maritime lien of [OW Bunker] afforded hereunder or by any other applicable Law, be it of the place of delivery, the flag of the Vessel, or the place of jurisdiction and/or arrest of the Vessel, or otherwise howsoever.

(Exh. A, General Terms, p. 8, art. I.9).

17.

Article P.5 of the General Terms provides as follows:

The General Maritime Law of the United States shall always apply with respect to the existence of a maritime lien, regardless of the country in which [OW Bunker] takes legal action. [OW Bunker] shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

(Exh. A, General Terms, pp. 11 – 12, art. P.5).

18.

In filing this Verified Complaint, OW Bunker exercises its discretion to proceed against NSCSA, including the maritime attachment of the BAHRI YANBU under the substantive laws of the General Maritime Law of the United States of America as well as the Commercial Instrument and Maritime Liens Act (the "FMLA"), 46 U.S.C. §§ 31303 *et seq*., and under the procedural laws of the Federal Rules of Civil Procedure, including the Supplemental Rules for Admiralty and Maritime Claims, as well as the Local Rules of the U.S. District Court for the Southern District of Texas.

**Unpaid Bunkers Sold and Delivered to the LULU**

19.

OW Bunker contracted to provide bunkers and related barging services to the LULU at the Louisiana Offshore Oil Port Terminal (hereafter "LOOP"), which bunkers were ordered by NSCSA.  This contract to purchase bunkers is evidenced by Sales Order Confirmation No. 129-18750, dated October 2, 2014, a true and correct copy of which is attached as Exhibit B − 1, hereafter the "LULU Confirmation".

20.

The LULU Confirmation, as well as the sale and delivery of the marine fuels to the LULU, were subject to the General Terms, as set forth above in Paragraphs 12 through 17, which are repeated herein as if copied *in extenso*.

21.

On October 2, 2014, OW Bunker issued the LULU Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V LULU and/or National Shipping Company of Saudi Arabia and indicated that it would provide 2,200 metric tons of Fueloil 380-CST 3.5% and 200 metric tons of Gasoil 0.1% to the LULU at LOOP, including associated barge service to transport and transfer the foregoing fuel bunkers to the LULU, with an estimated delivery date of October 6, 2014.  (Exh. B − 1, LULU Confirmation, p. 1.)

22.

On October 8, 2014, pursuant to the LULU Confirmation and the General Terms, the LULU accepted the delivery of 2,201.141 metric tons of Fueloil 380-CST 3.5% marine bunkers and 200.493 metric tons of Gasoil 0.1% from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the LULU Bunker Delivery Receipt, a true and correct

copy of which is attached as Exhibit B − 2 *in globo*.

23.

On October 8, 2014, OW Bunker issued an invoice to the LULU and / or owners and / or Charterers, which was addressed to National Shipping Co of Saudi Arabia c/o Mideast Ship Management Limited JLT, referencing Sales Confirmation No. 129-18750, in the amount of US$ 1,426,136.12 for 2,201.141 metric tons of Fueloil 380-CST 3.5% marine bunkers and 200.493 metric tons of Gasoil 0.1% delivered to the LULU in LOOP, to be paid on or before November 7, 2014, a true and correct copy of which is attached hereto as Exhibit B − 3, hereafter "LULU Invoice."

24.

At all times relevant herein, the LULU was owned by defendant NSCSA and operated / managed by Mideast.  See website details of www.maritime-connector.com for the LULU a true and correct print out of which is attached as Exhibit B − 4, as well as NSCSA's Fleet Overview section of its own website located at www.bahri.sa/fleet-specification.

25.

As of this date, neither ING nor OW Bunker have been paid for the bunkers delivered to the LULU in breach of the LULU Confirmation and General Terms, and plaintiff is accordingly owed US$ 1,426,136.12 for the bunkers, fees and charges as aforesaid.

26.

Pursuant to the General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied, which are presently valued at US$ 351,577.21.  (Exh. A, General Terms, p. 7, art. I.5.)

27.

Pursuant to General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account. (*Id*., art. I.7.). Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the LULU Invoice, and pursuant to the General Terms, the LULU, NSCSA, and Mideast remain jointly and severally liable for all amounts due and owing to OW Bunker.

**Unpaid Bunkers Sold and Delivered to the NIBAN**

28.

OW Bunker contracted to provide bunkers and related barging services to the NIBAN at the Galveston Offshore Lightering Area (hereafter "GOLA"), which bunkers were ordered by NSCSA. This contract to purchase bunkers is evidenced by Sales Order Confirmation No. 129-18786, dated October 7, 2014, a true and correct copy of which is attached as Exhibit C – 1, hereafter the "First NIBAN Confirmation".

29.

The First NIBAN Confirmation, as well as the sale and delivery of the marine fuels to the NIBAN, were subject to the General Terms, as set forth above in Paragraphs 12 through 17, which are repeated herein as if copied *in extenso*.

30.

On October 7, 2014, OW Bunker issued the First NIBAN Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V NIBAN and/or National Shipping Company of Saudi Arabia and indicated that it would provide 350 metric tons of Fueloil 380-

CST 1% to the NIBAN at GOLA, including associated barge service to transport and transfer the foregoing fuel bunkers to the NIBAN, with an estimated delivery date of October 13, 2014. (Exh. C – 1, First NIBAN Confirmation, p. 1.)

31.

On October 15, 2014, pursuant to the First NIBAN Confirmation and the General Terms, the NIBAN accepted the delivery of 350.073 metric tons of Fueloil 380-CST 1% marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the First NIBAN Bunker Delivery Receipt, which given the exigencies of this matter, has not been provided to undersigned counsel, but which will be filed upon receipt via a Motion to Substitute Exhibit, a true and correct copy of which will be attached as Exhibit C – 2 *in globo*.

32.

On October 15, 2014, OW Bunker issued an invoice to the NIBAN and / or owners and / or Charterers, which was addressed to National Shipping Co of Saudi Arabia c/o Mideast Ship Management Limited JLT, referencing Sales Confirmation No. 129-18786, in the amount of US$ 211,794.17 for 350.073 metric tons of Fueloil 380-CST 1% marine bunkers delivered to the NIBAN in GOLA, to be paid on or before November 14, 2014, a true and correct copy of which is attached hereto as Exhibit C – 3, hereafter "First NIBAN Invoice."

33.

At all times relevant herein, the NIBAN was owned by defendant NSCSA and managed by Mideast.  See Press Release from NSCSA/Bahri dated August 24, 2014, concerning the transfer of ownership to NSCSA of the NIBAN, http://www.bahri.sa/printable/article-details.php?id=364, a true and correct print out of which is attached as Exhibit C – 4.

34.

As of this date, neither ING nor OW Bunker have been paid for the foregoing bunkers delivered to the NIBAN in breach of the First NIBAN Confirmation and General Terms, and plaintiff is accordingly owed US$ 211,794.17 for the bunkers, fees and charges as aforesaid.

35.

Pursuant to the General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied, in the present amount of US$ 55,421.37. (Exh. A, General Terms, p. 7, art. I.5.)

36.

Additionally, OW Bunker contracted to provide bunkers and related barging services to the NIBAN at the LOOP, which bunkers were initially ordered by NSCSA. This contract to purchase bunkers is evidenced by Sales Order Confirmation No. 129-18823, dated October 21, 2014, a true and correct copy of which is attached as Exhibit C – 5, hereafter the "Second NIBAN Confirmation".

37.

The Second NIBAN Confirmation, as well as the sale and delivery of the marine fuels to the NIBAN, were subject to the General Terms, as set forth above in Paragraphs 12 through 17, which are repeated herein as if copied *in extenso*.

38.

On October 21, 2014, OW Bunker issued the Second NIBAN Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V NIBAN and/or National Shipping Company of Saudi Arabia and indicated that it would provide 1,000 metric tons of

Fueloil 380-CST 3.5% and 180 metric tons of Gasoil 0.1% to the NIBAN at the LOOP, including associated barge service to transport and transfer the foregoing fuel bunkers to the NIBAN, with an estimated delivery date of October 21, 2014.  (Exh. C – 5, Second NIBAN Confirmation, p. 1.)

39.

On October 21, 2014, pursuant to the Second NIBAN Confirmation and the General Terms, the NIBAN accepted the delivery of 1,000.126 metric tons of Fueloil 380-CST 3.5% and 180.102 metric tons of Gasoil 0.1% marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the Second NIBAN Bunker Delivery Receipt, a true and correct copy of which is attached as Exhibit C – 6 *in globo*.

40.

On October 21, 2014, OW Bunker issued an invoice to the NIBAN and / or owners and / or Charterers, which was addressed to National Shipping Co of Saudi Arabia c/o Mideast Ship Management Limited JLT, referencing Sales Confirmation No. 129-18823, in the amount of US$ 684,805.43 for 1,000.126 metric tons of Fueloil 380-CST 3.5% and 180.102 metric tons of Gasoil 0.1% marine bunkers delivered to the NIBAN at the LOOP, to be paid on or before November 20, 2014, a true and correct copy of which is attached hereto as Exhibit C – 7, hereafter "Second NIBAN Invoice."

41.

At all times relevant herein, the NIBAN was owned by defendant NSCSA and managed by Mideast.  See Exh. C – 4, Press Release from NSCSA/Bahri dated August 24, 2014.

42.

As of this date, neither ING nor OW Bunker have been paid for the foregoing bunkers

12

delivered to the NIBAN in breach of the Second NIBAN Confirmation and General Terms, and plaintiff is accordingly owed US$ 684,805.43 for the bunkers, fees and charges as aforesaid.

43.

Pursuant to the General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied, in the present amount of US$ 174,099.53.  (Exh. A, General Terms, p. 7, art. I.5.)

44.

Pursuant to General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account.  (*Id*., art. I.7.). Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the First NIBAN Invoice and the Second NIBAN Invoice, and pursuant to the General Terms, the NIBAN, NSCSA, and Mideast remain jointly and severally liable for all amounts due and owing to OW Bunker.

**Unpaid Bunkers Sold and Delivered to the GHINAH**

45.

OW Bunker contracted to provide bunkers and related barging services to the GHINAH at the GOLA, which bunkers were ordered by NSCSA.  This contract to purchase bunkers is evidenced by Sales Order Confirmation No. 129-18805, dated October 10, 2014, a true and correct copy of which is attached as Exhibit D – 1, hereafter the "GHINAH Confirmation".

46.

The GHINAH Confirmation, as well as the sale and delivery of the marine fuels to the

GHINAH, were subject to the General Terms, as set forth above in Paragraphs 12 through 17, which are repeated herein as if copied *in extenso*.

47.

On October 10, 2014, OW Bunker issued the GHINAH Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V GHINAH and/or National Shipping Company of Saudi Arabia and indicated that it would provide 1,800 metric tons of Fueloil 380-CST 3.5% and 100 metric tons of Gasoil 380-CST 0.1% to the GHINAH at the GOLA, including associated barge service to transport and transfer the foregoing fuel bunkers to the GHINAH, with an estimated delivery date of October 13 or 14, 2014.  (Exh. D – 1, GHINAH Confirmation, p. 1.)

48.

On October 16, 2014, pursuant to the GHINAH Confirmation and the General Terms, the GHINAH accepted the delivery of 1,801.933 metric tons of Fueloil 380-CST 3.5% and 100.406 metric tons of Gasoil 380-CST 0.1% marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the GHINAH Bunker Delivery Receipt, a true and correct copy of which is attached as Exhibit D – 2 *in globo*.

49.

On October 16, 2014, OW Bunker issued an invoice to the GHINAH and / or owners and / or Charterers, which was addressed to National Shipping Co of Saudi Arabia c/o Mideast Ship Management Limited JLT, referencing Sales Confirmation No. 129-18805, in the amount of US$ 1,038,314.81 for 1,801.933 metric tons of Fueloil 380-CST 3.5% and 100.406 metric tons of Gasoil 380-CST 0.1% marine bunkers delivered to the GHINAH at the GOLA, to be paid on or before November 15, 2014, a true and correct copy of which is attached hereto as Exhibit D – 3,

hereafter "GHINAH Invoice."

50.

At all times relevant herein, the GHINAH was owned by defendant NSCSA and managed by Mideast.  See website details of www.maritime-connector.com for the GHINAH a true and correct print out of which is attached as Exhibit D − 4, as well as NSCSA's Fleet Overview section of its own website located at www.bahri.sa/fleet-specification.

51.

As of this date, neither ING nor OW Bunker have been paid for the bunkers delivered to the GHINAH in breach of the GHINAH Confirmation and General Terms, and plaintiff is accordingly owed US$ 1,038,314.81 for the bunkers, fees and charges as aforesaid.

52.

Pursuant to the General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied, in the present amount of US$ 270,413.56.  (Exh. A, General Terms, p. 7, art. I.5.)

53.

Pursuant to General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account.  (*Id*., art. I.7.). Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the GHINAH Invoice, and pursuant to the General Terms, the GHINAH, NSCSA, and Mideast remain jointly and severally liable for all amounts due and owing to OW Bunker.

15

**Unpaid Bunkers Sold and Delivered to the KAHLA**

54.

OW Bunker contracted to provide bunkers and related barging services to the KAHLA at the GOLA, which bunkers were ordered by NSCSA.  This contract to purchase bunkers is evidenced by Sales Order Confirmation No. 129-18857, dated October 20, 2014, a true and correct copy of which is attached as Exhibit E – 1, hereafter the "KAHLA Confirmation".

55.

The KAHLA Confirmation, as well as the sale and delivery of the marine fuels to the KAHLA, were subject to the General Terms, as set forth above in Paragraphs 12 through 17, which are repeated herein as if copied *in extenso*.

56.

On October 20, 2014, OW Bunker issued the KAHLA Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V KAHLA and/or National Shipping Company of Saudi Arabia and indicated that it would provide 1,300 metric tons of Fueloil 380-CST 3.5% to the KAHLA at the GOLA, including associated barge service to transport and transfer the foregoing fuel bunkers to the KAHLA, with an estimated delivery date of October 25, 2014.  (Exh. E – 1, KAHLA Confirmation, p. 1.)

57.

On October 26, 2014, pursuant to the Confirmation and the General Terms, the KAHLA accepted the delivery of 1,299.821 metric tons of Fueloil 380-CST 3.5% marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the KAHLA Bunker Delivery Receipt, a true and correct copy of which is attached as Exhibit E – 2 *in globo*.

58.

On October 26, 2014, OW Bunker issued an invoice to the KAHLA and / or owners and / or Charterers, which was addressed to National Shipping Co of Saudi Arabia c/o Mideast Ship Management Limited JLT, referencing Sales Confirmation No. 129-18867, in the amount of US$ 616,115.15 for 1,299.821 metric tons of Fueloil 380-CST 3.5% marine bunkers delivered to the KAHLA at the GOLA, to be paid on or before November 25, 2014, a true and correct copy of which is attached hereto as Exhibit E – 3, hereafter "KAHLA Invoice."

59.

At all times relevant herein, the KAHLA was owned by defendant NSCSA and managed by Mideast.  See website details of www.maritime-connector.com for the KAHLA a true and correct print out of which is attached as Exhibit E – 4, as well as NSCSA's Fleet Overview section of its own website located at www.bahri.sa/fleet-specification.

60.

As of this date, neither ING nor OW Bunker have been paid for the bunkers delivered to the KAHLA in breach of the KAHLA Confirmation and General Terms, and plaintiff is accordingly owed US$ 616,115.15 for the bunkers, fees and charges as aforesaid.

61.

Pursuant to the General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied, in the present amount of US$ 152,814.54.  (Exh. A, General Terms, p. 7, art. I.5.)

62.

Pursuant to General Terms, Article I.7, all costs borne by OW Bunker in connection with

the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account.  (*Id.*, art. I.7.).  Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the KAHLA Invoice, and pursuant to the General Terms, the KAHLA, NSCSA, and Mideast remain jointly and severally liable for all amounts due and owing to OW Bunker.

### Unpaid Bunkers Sold and Delivered to the SAHBA

63.

OW Bunker contracted to provide bunkers and related barging services to the SAHBA at the GOLA, which bunkers were ordered by NSCSA.  This contract to purchase bunkers is evidenced by Sales Order Confirmation No. 129-18879, dated October 25, 2014, a true and correct copy of which is attached as Exhibit F – 1, hereafter the "SAHBA Confirmation".

64.

The SAHBA Confirmation, as well as the sale and delivery of the marine fuels to the SAHBA, were subject to the General Terms, as set forth above in Paragraphs 12 through 17, which are repeated herein as if copied *in extenso*.

65.

On October 25, 2014, OW Bunker issued the SAHBA Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V SAHBA and/or National Shipping Company of Saudi Arabia and indicated that it would provide 1,000 metric tons of Fueloil 380-CST 3.5% to the SAHBA at the GOLA, including associated barge service to transport and transfer the foregoing fuel bunkers to the SAHBA, with an estimated delivery date of October 31, 2014.  (Exh. F – 1, SAHBA Confirmation, p. 1.)

66.

On October 27, 2014, pursuant to the SAHBA Confirmation and the General Terms, the SAHBA accepted the delivery of 1,000.116 metric tons of Fueloil 380-CST 3.5% marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the SAHBA Bunker Delivery Receipt, a true and correct copy of which is attached as Exhibit F – 2 *in globo*.

67.

On October 27, 2014, OW Bunker issued an invoice to the SAHBA and / or owners and / or Charterers, which was addressed to National Shipping Co of Saudi Arabia c/o Mideast Ship Management Limited JLT, referencing Sales Confirmation No. 129-18879, in the amount of US$ 472,554.81 for 1,000.116 metric tons of Fueloil 380-CST 3.5% marine bunkers delivered to the SAHBA at the GOLA, to be paid on or before November 26, 2014, a true and correct copy of which is attached hereto as Exhibit F – 3, hereafter "SAHBA Invoice."

68.

At all times relevant herein, the SAHBA was owned by defendant NSCSA and managed by Mideast.  See website details of www.maritime-connector.com for the SAHBA, a true and correct print out of which is attached as Exhibit F – 4, as well as NSCSA's Fleet Overview section of its own website located at www.bahri.sa/fleet-specification.

69.

As of this date, neither ING nor OW Bunker have been paid for the bunkers delivered to the SAHBA in breach of the SAHBA Confirmation and General Terms, and plaintiff is accordingly owed US$ 472,554.81 for the bunkers, fees and charges as aforesaid.

70.

Pursuant to the General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied, in the present amount of US$ 116,621.14.  (Exh. A, General Terms, p. 7, art. I.5.)

71.

Pursuant to General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account.  (*Id*., art. I.7.). Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the SAHBA Invoice, and pursuant to the General Terms, the SAHBA, NSCSA, and Mideast remain jointly and severally liable for all amounts due and owing to OW Bunker.

## Unpaid Bunkers Sold and Delivered to the GHAZAL

72.

OW Bunker contracted to provide bunkers and related barging services to the GHAZAL at Rotterdam, which bunkers were ordered by NSCSA.  This contract to purchase bunkers is evidenced by Sales Order Confirmation No. 129-18911, dated November 1, 2014, a true and correct copy of which is attached as Exhibit G – 1, hereafter the "GHAZAL Confirmation".

73.

The GHAZAL Confirmation, as well as the sale and delivery of the marine fuels to the GHAZAL, were subject to the General Terms, as set forth above in Paragraphs 12 through 17, which are repeated herein as if copied *in extenso*.

74.

On November 1, 2014, OW Bunker issued the GHAZAL Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V GHAZAL and/or National Shipping Company of Saudi Arabia and indicated that it would provide 220 metric tons of Fueloil 380-CST 1% to the GHAZAL at Rotterdam, including associated barge service to transport and transfer the foregoing fuel bunkers to the GHAZAL, with an estimated delivery date of November 4 or 5, 2014.  (Exh. G – 1, GHAZAL Confirmation, p. 1.)

75.

On November 5, 2014, pursuant to the Confirmation and the General Terms, the GHAZAL accepted the delivery of 220.912 metric tons of Fueloil 380-CST 1% marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the GHAZAL Bunker Delivery Receipt, which given the exigencies of this matter, has not been provided to undersigned counsel, but which will be filed upon receipt via a Motion to Substitute Exhibit, a true and correct copy of which will be attached as Exhibit G – 2 *in globo*.

76.

On November 5, 2014, OW Bunker issued an invoice to the GHAZAL and / or owners and / or Charterers, which was addressed to National Shipping Co of Saudi Arabia c/o Mideast Ship Management Limited JLT, referencing Confirmation No. 129-18911, in the amount of US$ 102,944.99 for 220.912 metric tons of Fueloil 380-CST 1% marine bunkers delivered to the KAHLA at Rotterdam, to be paid on or before December 5, 2014, a true and correct copy of which is attached hereto as Exhibit G – 3, hereafter "GHAZAL Invoice."

77.

At all times relevant herein, the GHAZAL was owned by defendant NSCSA and

managed by Mideast.  See website details of www.maritime-connector.com for the GHAZAL a true and correct print out of which is attached as Exhibit G – 4, as well as NSCSA's Fleet Overview section of its own website located at www.bahri.sa/fleet-specification.

78.

As of this date, neither ING nor OW Bunker have been paid for the bunkers delivered to the GHAZAL in breach of the GHAZAL Confirmation and General Terms, and plaintiff is accordingly owed US$ 102,944.99 for the bunkers, fees and charges as aforesaid.

79.

Pursuant to the General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied, in the present amount of US$ 24,287.19.  (Exh. A, General Terms, p. 7, art. I.5.)

80.

Pursuant to General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of the contract shall be for the breaching party's sole account.  (*Id.*, art. I.7.). Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the GHAZAL Invoice, and pursuant to the General Terms, the GHAZAL, NSCSA, and Mideast remain jointly and severally liable for all amounts due and owing to OW Bunker.

## Unpaid Services for Analysis of Bunkers Delivered to the HAWTAH

81.

OW Bunker contracted to provide bunkers and related barging services to the HAWTAH

at the GOLA, which bunkers were ordered by NSCSA.  This contract to purchase bunkers is evidenced by Sales Order Confirmation No. 129-18139, dated May 2, 2014, a true and correct copy of which is attached as Exhibit H – 1, hereafter the "HAWTAH Confirmation".

82.

The HAWTAH Confirmation, as well as the sale and delivery of the marine fuels and related services pertaining to analysis of the bunkers provided to the HAWTAH, were subject to the General Terms, as set forth above in Paragraphs 12 through 17, which are repeated herein as if copied *in extenso*.

83.

On May 2, 2014, OW Bunker issued the HAWTAH Confirmation for the account of the Master and/or Owner and/or Charterers and/or M/V HAWTAH and/or National Shipping Company of Saudi Arabia and indicated that it would provide 2,000 to 2,500 metric tons of Fueloil 380-CST 3.5% to the HAWTAH at the GOLA, including associated barge service to transport and transfer the foregoing fuel bunkers to the HAWTAH, as well as performing additional bunker analysis services, with an estimated delivery date of May 10, 2014.  (Exh. H – 1, HAWTAH Confirmation, p. 1.)

84.

On May 10, 2014, pursuant to the Confirmation and the General Terms, the HAWTAH accepted the delivery of marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker as evidenced by the HAWTAH Bunker Delivery Receipt, which given the exigencies of this matter, has not been provided to undersigned counsel, but which will be filed upon receipt via a Motion to Substitute Exhibit, a true and correct copy of which will be attached as Exhibit H – 2 *in globo*.

85.

On August 1, 2014, OW Bunker issued an invoice to the HAWTAH and / or owners and / or Charterers, which was addressed to National Shipping Co of Saudi Arabia, referencing Confirmation No. 129-18139, in the amount of US$ 408.00 for analysis of bunkers delivered to the HAWTAH at the GOLA, to be paid on or before September 4, 2014, a true and correct copy of which is attached hereto as Exhibit H – 3, hereafter "HAWTAH Invoice."

86.

At all times relevant herein, the HAWTAH was owned by defendant NSCSA and managed by Mideast.  See website details of www.maritime-connector.com for the HAWTAH a true and correct print out of which is attached as Exhibit H – 4, as well as NSCSA's Fleet Overview section of its own website located at www.bahri.sa/fleet-specification.

87.

As of this date, neither ING nor OW Bunker have been paid for the bunkers analysis pertaining to the HAWTAH in breach of the HAWTAH Confirmation and General Terms, and plaintiff is accordingly owed US$ 408.00 for the bunkers, fees and charges as aforesaid.

88.

Pursuant to the General Terms, Article I.5, OW Bunker is entitled to recover contractual interest of three (3%) percent per month on the foregoing unpaid invoiced amount until paid, and a delayed payment administrative fee of US$ 1.50 per metric ton of bunkers supplied, in the present amount of US$ 143.48.  (Exh. A, General Terms, p. 7, art. I.5.)

89.

Pursuant to General Terms, Article I.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in

connection with breach of the contract shall be for the breaching party's sole account.  (*Id.*, art. I.7.).  Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the HAWTAH Invoice, and pursuant to the General Terms, the HAWTAH, NSCSA, and Mideast remain jointly and severally liable for all amounts due and owing to OW Bunker.

**Total Amounts Due and Owing OW Bunker
for Bunkers Delivered to the Supplied Vessels at the Request of NSCSA**

90.

OW Bunker itemizes its current recoverable damages from NSCSA as follows:

| | |
|---|---:|
| LULU Invoice Amount | $ 1,426,136.12 |
| LULU Interest | 351,577.21 |
| First NIBAN Invoice Amount | 211,794.17 |
| First NIBAN Interest | 55,421.37 |
| Second NIBAN Invoice Amount | 684,805.43 |
| Second NIBAN Interest | 174,099.53 |
| GHINAH Invoice Amount | 1,038,314.81 |
| GHINAH Interest | 270,413.56 |
| KAHLA Invoice Amount | 616,115.15 |
| KAHLA Interest | 152,814.54 |
| SAHBA Invoice Amount | 472,554.81 |
| SAHBA Interest | 116,621.14 |
| GHAZAL Invoice Amount | 102,944.99 |
| GHAZAL Interest | 24,287.12 |

| | |
|---|---|
| HAWTAH Invoice Amount | $ 408.00 |
| HAWTAH Interest | 143.48 |
| Attorney's Fees, Expenses and Costs | 75,000.00 |
| **TOTAL** | **$ 5,773,451.43** |

Contractual interest and attorney's fees, expenses and court costs continue to accrue during the pendency of this admiralty and maritime action and any appeal thereof, in accordance with the General Terms, *supra*.

**Request for Attachment of the BAHRI YANBU for the Debts
of the Supplied Vessels Pursuant to Supplemental Admiralty Rule B**

91.

OW Bunker realleges and reavers Paragraphs 1 through 90 *supra* as if same were copied herein *in extenso*.

92.

At all times relevant herein, the BAHRI YANBU was owned by defendant NSCSA and managed by Mideast.  See website details of www.maritime-connector.com for the BAHRI YANBU a true and correct print out of which is attached as Exhibit I, as well as NSCSA's Fleet Overview section of its own website located at www.bahri.sa/fleet-specification.

93.

Upon information and belief, NSCSA cannot be found within this District but has or will have property within this District, including, but not limited to, the BAHRI YANBU, which vessel is presently, or shortly will be, within this District.

94.

Pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, OW Bunker is entitled to attach all of NSCSA's property

within this District, including, but not limited to, the BAHRI YANBU to satisfy OW Bunker's claims, as well as other costs taxable to NSCSA as a result of OW Bunker's having to bring this action, including but not limited to pre-judgment interest, costs, expenses, and attorneys' fees.

95.

This Rule B attachment has been brought in order to obtain personal jurisdiction over NSCSA for purposes of recouping payment for the unpaid bunkers ordered by NSCSA or its disclosed agent, Mideast, and delivered to the Supplied Vessels as described herein.

96.

ING agrees to release and hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the attachment of the aforesaid BAHRI YANBU, and all property of NSCSA aboard that vessel or located within this District.

All and singular the foregoing premises are true and correct within the admiralty jurisdiction of this Honorable Court.

**WHEREFORE**, plaintiff, ING Bank N.V., prays:

1. That this Verified Complaint be deemed good and sufficient;

2. That process in due form of law according to the rules and practices of this Court may issue against the National Shipping Company of Saudi Arabia (a.k.a. "Bahri"), requesting it to appear and answer all singular the matters aforesaid;

3. That because NSCSA is a foreign corporation which cannot be found within this District, is not qualified to do business in the State of Texas, and has no agent for the service of process, that all of NSCSA's goods, chattels, funds, credits, money and other assets or

property found within this District, including the M/V BAHRI YANBU, IMO No. 9626534, her engines, tackle, equipment, furniture, appurtenances, etc. be attached to satisfy the sum of OW Bunker's claims up to the amount of **US$ 5,773,451.43**, plus contractual attorneys' fees, costs, expenses, and interest, which continue to accrue during the pendency of this action and any appeal thereof, all pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, including the fees and costs of the United States Marshall;

4. That this Court issue a Writ of Maritime Attachment and Garnishment of all property of NSCSA in this District to the Master of the M/V BAHRI YANBU;

5. That this Court retain the attached property and/or the proceeds of sale as security pending adjudication of OW Bunker's claims against NSCSA;

6. That any property attached in this proceeding be sold under the direction of this Court and the proceeds of the sale be deposited into the Registry of this Court;

7. That this Court retain jurisdiction over NSCSA to attach its property found within the District in order to enter a judgment in favor of ING Bank and against NSCSA, *in personam*, in the amount of ING Bank's claim and any additional amounts owed, including, but not limited to, attorneys' fees, costs, expenses, and pre-judgment interest for ING Bank's damages;

8. That this Court, after due proceedings are had, enter a judgment in favor of ING Bank and against NSCSA in the principal amount of **US$ 5,773,451.43** and any additional amounts owed, including, but not limited to, attorneys' fees, costs, expenses, and pre-judgment interest for OW's damages;

9.      That this Court grant ING Bank such other and further relief as may be just and proper.

Respectfully submitted:

/s/ Joseph R. Messa
**JOSEPH R. MESSA (#11346)**
**KING, KREBS & JURGENS, P.L.L.C.**
6363 Woodway, Suite 820
Houston, Texas  77057
Telephone:  (713) 334-5644
Facsimile:  (713) 334-5828
E-mail:  jmessa@kingkrebs.com

**and**

**JAMES D. BERCAW**
**ROBERT J. STEFANI**
**LAURA E. AVERY**
**(Motions for admission *pro hac vice* to be filed)**
**KING, KREBS & JURGENS, P.L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-3800
Facsimile:  (504) 582-1233
E-Mail:   jbercaw@kingkrebs.com
              rstefani@kingkrebs.com
              lavery@kingkrebs.com

*Attorneys for ING Bank N.V.*

**PLEASE SERVE:**

**The Master of the M/V BAHRI YANBU, IMO No. 9626534**
**And Issue a Writ of Maritime Attachment against the M/V BAHRI YANBU,**
**And all other property thereon belonging to defendant,**
**The National Shipping Company of Saudi Arabia a.k.a. "Bahri"**